IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY and AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 1:18-CV-602-RP |
| CENTRAL TEXAS HIGHWAY CONSTRUCTORS, LLC, ZACHRY INDUSTRIAL, INC., and ZACHRY AMERICAN INFRASTRUCTURE, INC., | § § § § § § | |
| Defendants. | | |

### DEFENDANT CENTRAL TEXAS HIGHWAY CONSTRUCTORS, LLC'S REPLY IN SUPPORT OF ITS RULE 12(b) MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant Central Texas Highway Constructors, LLC ("CTHC") files the following Reply in support of its motion to dismiss Plaintiffs Zurich American Insurance Company's ("Zurich's") and American Guarantee & Liability Insurance Company's ("AGLIC's") Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) (Doc. No. 27) and would respectfully show the Court as follows:

### I. INTRODUCTION & SUMMARY

This Court should abstain from exercising jurisdiction over this suit because the "most important" *Trejo* factors involving comity, federalism, and judicial economy weigh heavily in favor of dismissal. Plaintiffs do not dispute that the suit pending in Dallas County (the "Texas Action") is a parallel state court action in which all of the matters in controversy may be fully

litigated. Moreover, dismissing this suit in favor of the comprehensive Texas Action serves judicial economy and comity by allowing the state court to decide all matters involving CTHC's insurance coverage—including coverage under the Steadfast Policy and matters of Texas public policy—without the risk of duplicative or piecemeal litigation. The second, third, and fourth *Trejo* factors involving fairness also support dismissal. Plaintiffs engaged in forum shopping by filing an anticipatory coverage suit only after coverage negotiations with CTHC failed, and inequities would exist if Plaintiffs' declaratory judgment claims proceeded in this forum. For all the foregoing reasons explained in more detail below, this Court should dismiss Plaintiffs' Second Amended Complaint in favor of the Texas Action.

## II. ARGUMENT & AUTHORITIES

### A. The Most Important *Trejo* Factors Involving Comity, Federalism, And Judicial Economy Weigh Heavily In Favor Of Abstention.

Of the seven *Trejo* factors[1] a federal court considers to determine whether to dismiss a declaratory judgment action, the "***most important factors***" are those "involving comity, federalism, and judicial economy." *Nautilus Ins. Co. v. Bolton*, 2012 U.S. Dist. LEXIS 87601, at *13 (S.D. Tex. June 25, 2012) (dismissing insurer's declaratory judgment action in favor of a pending state case involving the same issues of state law but also involving additional claims and all relevant parties) (emphasis added); *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 391 (5th Cir. 2003) (*Trejo* factors 1, 5, 6, and 7 involve comity, federalism, and judicial

---

[1] *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994) (The *Trejo* factors include: (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending).

economy/efficiency). Here, the *Trejo* factors involving comity, federalism, and judicial economy "weigh heavily in favor of abstention." *Bolton*, 2012 U.S. Dist. LEXIS at *13.

> 1. ***Trejo* Factor 1: The Parties Can Fully Litigate All Matters In Controversy In The Parallel Texas Action.**

With regard to the first *Trejo* factor, the "presence or absence of a parallel state proceeding is an important factor" in deciding whether to abstain under the *Brillhart/Trejo* abstention doctrine. *Sherwin-Williams*, 343 F.3d at 394. Where a federal declaratory judgment action raises "only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its jurisdiction to dismiss the federal suit." *Id*. at 390; *see also USAA Cas. Ins. Co. v. Dydek*, 2006 U.S. Dist. LEXIS 81279, at *4 (W.D. Tex. Sept. 27, 2006) ("abstention from a declaratory judgment action is ***ordinarily appropriate*** when the state offers an adequate alternative forum in which to resolve the particular dispute") (emphasis added).

Here, Plaintiffs do not dispute that there is a pending state action involving issues of state law in which all issues in controversy may be fully litigated. *See* Doc. No. 32, at 7 ("The State Court DJ addresses the same parties and issues involved here."). Moreover, the Texas Action is broader than this federal suit because it involves CTHC's professional liability insurer, Steadfast Insurance Company ("Steadfast"), which cannot be joined to this federal suit without destroying diversity. *Sport Supply Group, Inc. v. Davis*, 1999 WL 47232, at *2 (N.D. Tex. Jan. 20, 1999) (dismissing federal suit in favor of pending state suit which named insurer/federal plaintiff and other insurers as defendants); *Lancer Ins. Co. v. Shuttleking, Inc*., 1999 U.S. Dist. LEXIS 1452, at *10 (N.D. Tex. Feb. 5, 1999) (dismissing federal suit in favor of pending suit in Dallas County where the scope of the state court declaratory judgment action was broader and involved other

parties). Thus, the presence of a parallel and more comprehensive Texas Action is one of the "most important factors" supporting dismissal and is a far cry from being a "neutral" factor. *See Bolton*, 2012 U.S. Dist. LEXIS at *13; *see also* Doc. No. 32, at 8.

Plaintiffs try to downplay the fact that the Texas Action is a more comprehensive action involving all relevant parties by claiming that (1) CTHC's coverage claims under the Steadfast Policy[2] are not ripe; and (2) the interpretation and application of the Steadfast Policy does not or should not occur unless and until a finding regarding other applicable insurance. *See* Doc. No. 32, at 9-10. This argument is meritless for several reasons. First and foremost, whether or not Plaintiffs are correct, which is denied, these arguments do not change the fact that the pending Texas Action represents a parallel case wherein the same issues of state law may be adjudicated. Plaintiffs Second Amended Complaint may be dismissed on this basis without more. *Bolton*, 2012 U.S. Dist. LEXIS at *13. Moreover, Plaintiffs' argument that the Steadfast Policy's "other insurance" provision means that the Steadfast Policy applies "as excess to other applicable insurance available to CTHC" fails because the Steadfast Policy and the Zurich Policy[3] cover different types of risk. *See Hartford Cas. Ins. Co. v. Exec. Risk Specialty Ins. Co.*, 2004 Tex. App. LEXIS 9542, at *5 (Tex. App.—Dallas Oct. 28, 2004, pet. denied) (the "other insurance" clause in an errors and omissions policy was inapplicable where a general liability policy and an errors and omissions policy covered different risks).[4] Even Plaintiffs acknowledge that the Steadfast Policy is a

---

[2] *See* Ex. A (Contractor's Protective Professional Indemnity and Liability Policy No. EOC 9261942-00 issued by Steadfast to CTHC for the period from August 29, 2007 to August 29, 2013 (the "Steadfast Policy")).

[3] *See* Ex. B (Commercial General Liability Policy No. GLO 9261833-00 issued by Zurich to CTHC for the period from August 27, 2007 to May 11, 2013 (the "Zurich Policy")).

[4] *Compare* Ex. A *with* Ex. B. The Steadfast Policy is a Contractor's Protective Professional Indemnity Liability providing coverage for, among other things, "Damages" because of a "Claim" arising out of an actual or alleged negligent act, error or omission with respect to the rendering or failure to render "***Professional Services***" made against CTHC during the policy period or Extended Reporting Period. *See* Ex. A (emphasis added). The Zurich Policy, on the other hand, provides coverage for, among other things, sums that CTHC is legally obligated to pay as damages because

"completely different kind of insurance policy." *See* Doc. No. 32, at 7. To the extent that Plaintiffs argue the HBZ Umbrella Policies must also be exhausted before the Steadfast Policy applies, such argument is contrary to Texas law.[5] Furthermore, Plaintiffs' argument that coverage under the Steadfast Policy is not a ripe issue is directly contradicted by its own pleadings in the Original Complaint, wherein Steadfast sought a declaratory judgment regarding Steadfast's obligations to CTHC under the Steadfast Policy. *See* Doc. No. 1.

Plaintiffs also rely on the "other insurance" provision of the Steadfast Policy to assert that before the Steadfast Policy would apply, "there should first be a determination regarding the rights and obligations owed under the Zurich CGL Policy." *See* Doc. No. 32, at 8. Plaintiffs improperly suggest that this Court should allow piecemeal litigation by deciding Zurich's coverage obligations first, only after which the parties would litigate Steadfast's coverage obligations in state court. *Houston Gen. Ins. Co. v. Chickasha Cotton Oil Co.*, 1997 U.S. Dist. LEXIS 19436, at *7 (N.D. Tex. Nov. 21, 1997) (dismissing federal suit in favor of parallel state action implicating "numerous contracts of insurance" and involving all of the insured's alleged insurers not present in the federal suit, thereby "presenting the possibility of complete relief rather than piecemeal litigation"). Here, the district court in Dallas County has jurisdiction over Steadfast, Zurich, and AGLIC and will determine how the Zurich, Steadfast, and HBZ Umbrella Policies operate together for purposes of coverage in the Bankruptcy Litigation.[6] Thus, to avoid "piecemeal litigation" and afford the

---

of "***property damage***" and a defense against any "suit" seeking damages because of "property damage" caused by an "occurrence." *See* Ex. B (emphasis added).

[5] *N. Am. Capacity Ins. Co. v. Colony Specialty Ins. Co.*, 273 F. Supp. 3d 711, 715 (S.D. Tex. 2017) (rejecting the primary insurer's argument that its "other insurance" provision would require the excess policy to be exhausted before the primary policy applies because coverage under the "true excess" policy is not triggered until the limits of the "excess by coincidence" policy are exhausted).

[6] The term "Bankruptcy Litigation" means the adversary proceeding in bankruptcy court styled *In re SH 130 Concession Company, LLC v. Central Texas Highway Constructors, LLC et al.*, Adversary No. 18-01030-TMD, in the United States Bankruptcy Court for the Western District of Texas.

possibility of "complete relief," this Court should abstain from exercising jurisdiction in favor of the pending Texas Action. *Id*.

> 2.  ***Trejo* Factors 5 and 6: Dismissing This Lawsuit In Favor Of The Comprehensive Texas Action Serves Judicial Efficiency And Economy.**

With regard to the fifth *Trejo* factor, Plaintiffs spend considerable time explaining how the Western District of Texas in Austin is a convenient forum by identifying the location of CTHC, the highway that is the source of the underlying dispute,[7] previous litigation between CTHC and another insurer, the pending Bankruptcy Litigation, and where the insurance policies were placed. But no factor under the *Trejo* analysis asks the Court to consider these locations. Instead, the test is whether the federal court "is a convenient forum for the parties and witnesses." *Trejo*, 39 F.3d at 590–91. Here, Plaintiffs' obligations to defend CTHC in the underlying Bankruptcy Litigation are matters of law to be decided through dispositive motions.[8] Thus, the location of witnesses does not matter for purposes of this analysis. Plaintiffs have not alleged that the Western District of Texas is a more convenient forum for Plaintiffs than Dallas County. Zurich and AGLIC are corporations organized under New York law with principal places of business in Illinois. *See* Doc. No. 23, at ¶¶ 2-3. Plaintiffs have no connection to Austin.

---

[7] Plaintiffs' reference to segments 5 and 6 of Texas State Highway 130 as the "Austin Highway" is a misnomer. This highway is a road in San Antonio commonly referred to as the "Pickle Parkway," predominately located in Caldwell and Guadalupe counties and not within Austin city limits.

[8] *See ABC Distrib., Inc. v. Lumbermens Mut. Ins. Co.*, 646 F.2d 207, 208 (5th Cir. 1981) ("The central issue in this present case is whether Lumbermens had a duty to defend the prior action. This issue is appropriate for determination upon a motion for summary judgment because, as both parties agree, an insurance company's duty to defend an action against its insured is determined by examining whether the allegations of the underlying complaint against the insured fall within the coverage of the insurance policy."); *see also Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp.2d 601, 606 (E.D. Tex. 2003) ("Whether the insurer must defend the insured is determined as a matter of law because the Court need only examine the policy language and the allegations in the underlying petition to make the decision."); *Burlington Ins. Co. v. Tex. Krishnas, Inc.*, 143 S.W.3d 226, 229 (Tex. App.—Eastland 2004, no pet.) ("The question of the existence of a duty to defend is a question of law.").

Plaintiffs incorrectly state that "no parties have any connection to Dallas County." *See* Doc. No. 32, at 9. Plaintiffs wholly ignore CTHC's pleadings in the Texas Action, wherein CTHC alleges that Zurich's principal office in the state of Texas is in Dallas County. *See* Ex. C (CTHC's Orig. Pet. at ¶ 9). Zurich filed a general denial but did not object to Dallas County as the appropriate venue. *See* Ex. D (Zurich's Answer). Indeed, for the last four months, Zurich has not objected to Dallas County as the appropriate venue for the Texas Action and has waived any right to contest venue now. *See id.*[9] Dallas County is an appropriate and convenient forum for the parties.[10] The fifth *Trejo* factor does not support retention of jurisdiction over this matter in favor of the comprehensive Texas Action.

With regard to the sixth *Trejo* factor, dismissing this federal suit in favor of the Texas Action would serve judicial economy because only one court should decide all coverage issues relating to CTHC and the Bankruptcy Litigation. *Chickasha Cotton Oil Co.*, 1997 U.S. Dist. LEXIS at *7. Steadfast is not a party and cannot be joined to this litigation for purposes of adjudicating the priority of the Steadfast Policy relative to the policies issued by Plaintiffs. If, as Plaintiffs contend, the Steadfast Policy only applies in excess of the policies issued by Zurich and AGLIC, then the Texas Action is the more appropriate forum to determine how coverage under these policies work together. To allow this declaratory judgment action to proceed without Steadfast would duplicate the state court's efforts and not promote judicial efficiency or economy.

---

[9] *See* TEX. CIV. PRAC. & REM. CODE ANN. §15.002 (West 2018) (Venue is proper "in the county of the defendant's principal office in this state, if the defendant is not a natural person."); *see also* TEX. CIV. PRAC. & REM. CODE ANN. §15.063 (West 2018) (a defendant waives venue by failing to object by written motion prior to or concurrently with his first responsive pleading, except by special appearance).

[10] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.005 (West 2018) ("In a suit in which the plaintiff has established proper venue against a defendant, the court also has venue of all the defendants in all claims or actions arising out of the same transaction, occurrence, or series of transactions or occurrences.").

### 4. *Trejo* Factor 7: Plaintiffs' Claims For Declaratory Judgment Involve Matters Of Texas Public Policy That Should Be Decided By A Texas State Court.

Although this Court is not asked to construe a state judicial decree, Plaintiffs have sought a declaratory judgment regarding the insurability of claims for restitution and disgorgement, which Plaintiffs allege is contrary to Texas public policy.[11] While CTHC denies that any public policy precludes the coverage claimed for the underlying Bankruptcy Litigation, if, *arguendo*, public policy considerations are implicated in this case, a Texas state court arguably has a greater interest in deciding such matters.[12]

### B. The *Trejo* Factors Involving Fairness Also Support Dismissal.

The second, third, and fourth *Trejo* factors involve a "fairness" inquiry that also favors dismissal. *Sherwin-Williams*, 343 F.3d at 391. Regarding the second and third *Trejo* factors, Plaintiffs brought this coverage suit only after the parties engaged in lengthy negotiations regarding coverage. *See Pa. Gen. Ins. Co. v. CaremarkPCS*, 2005 U.S. Dist. LEXIS 44712 (N.D. Tex. Aug. 24, 2005) (The plaintiff/insurer's actions "suggest an improper motive for filing this suit for declaratory judgment, as the plaintiffs' suit was filed after an unsuccessful attempt by the parties to resolve [the insured's] claim for insurance coverage."). Thus, Plaintiffs' filing was an improper attempt at bypassing CTHC's right as the "true plaintiff" to choose the forum in which to sue its insurers. *Id*.; *see also Dynamic Sports Nutrition, LLC v. Hi-Tech Pharm., Inc*., 2016 U.S.

---

[11] *See* Doc. No. 23 (Pls.' Second Amended Compl. ¶ 43) ("It is against the public policy of the State of Texas to award insurance coverage for disgorgement or for profiting from one's own wrongdoing"); *see also id*. at ¶¶ 60-61 ("It is against the public policy of the State of Texas to award insurance coverage for disgorgement or restitution or for profiting from one's own wrongdoing").

[12] *Burks v. XL Specialty Ins. Co*., 534 S.W.3d 458, 469 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("[N]o Texas court has held that insuring a settlement of a claim seeking restitution or disgorgement is against public policy or otherwise generally 'uninsurable under the law' of Texas; nor has the Legislature enacted any legislation on point."); *cf. United Services Life Ins. Co. v. Delaney*, 328 F.2d 483, 485 (5th Cir. 1964) (en banc) (ordering abstention in two diversity cases involving purely Texas law issues until "the courts of the State of Texas shall have declared the law of the State of Texas").

Dist. LEXIS 32977, at *10-12 (S.D. Tex. Mar. 15, 2016) (giving deference to action brought by true plaintiff, especially where the events did not mandate insurer's immediate filing of a declaratory judgment suit).

Regarding the fourth *Trejo* factor, Plaintiffs assert that no inequities would exist in allowing Plaintiffs' federal suit to proceed because the "only issue not the same in this action and the State Court DJ Suit is interpretation and application of coverage under the Steadfast CPPI Policy, ***an interpretation and application that*** does not and ***should not occur*** unless and until there is a finding regarding the extent of coverage under other applicable insurance." Doc. No. 32, at 10 (emphasis added). Plaintiffs' argument is contradicted by its own position in this case. On the one hand, Plaintiffs contend that this Court should interpret the Steadfast Policy—even in the absence of Steadfast as a party—such that the "definite, certain meaning" of its "other insurance" provision applies as excess to other applicable insurance. *Id.* at 8. But on the other hand, Plaintiffs assert that no court should interpret the Steadfast Policy until there is a finding regarding coverage under "other applicable insurance" available to CTHC. *Id.* at 10. Plaintiffs cannot have it both ways. Instead, to avoid any duplicative litigation or divergent rulings, this Court should defer to the comprehensive Texas Action, which will decide issues of coverage under all policies, including the Steadfast Policy with Steadfast as a party.

Plaintiffs assert that the state court will apply the "first to file" rule and grant Plaintiffs' pending motion to stay the Texas Action. As a preliminary matter, the court in the Texas Action has not acted on Plaintiffs' motion to stay, which is not scheduled for hearing until January 15, 2019. In any event, Plaintiffs' argument is not supported by Texas law. The "first to file" rule "applies only when two similar actions are pending in two federal courts, ***not where one is in state court and the other in federal court***." *See Am. Bankers Life Ass. Co. of Fla. v. Overton*, 128

F. App'x 399, 403 (5th Cir. 2005) ("We find no indication from case law that the 'first-to-file' rule plays a part in the circumstance that we face today — two actions pending, but one is in state court and the other in federal court."). To determine whether to grant or deny Plaintiffs' motion to stay the pending Texas Action, the state court will consider principles of comity under several factors, only one of which involves an inquiry into which case was filed first. *See In re Old Am. Cty. Mut. Fire Ins. Co.*, 2012 Tex. App. LEXIS 10670, at *6 (Tex. App.—Austin Dec. 20, 2012, no pet.) (finding no abuse in discretion where trial court declined to stay a proceeding in favor of a first-filed federal suit). Thus, the fact that the Texas Action was not pending when Plaintiffs filed their federal complaint "does not weigh against dismissal" and is certainly not dispositive of whether the state court will grant Plaintiffs' motion to stay. *Id.*; *see also Overton*, 128 F. App'x at 403. Principles of fairness, including the avoidance of duplicative lawsuits and potentially inconsistent rulings in order to obtain relief under all relevant policies, confirm that Plaintiffs' Second Amended Complaint should be dismissed in favor of the pending comprehensive Texas Action.

### III. PRAYER

WHEREFORE, Defendant Central Texas Highway Constructors, LLC requests this Court to grant its Motion to Dismiss Plaintiffs' Second Amended Complaint and enter an order (1) granting Defendant's Motion; (2) dismissing Plaintiffs' Second Amended Complaint with prejudice; and (3) awarding Defendant any and all other and further relief to which it may be justly entitled.

Respectfully submitted,

*/s/ Micah E. Skidmore*_____
Micah E. Skidmore
State Bar No. 24046856
Emily Buchanan
State Bar No. 24101568

HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219-76763
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**ATTORNEYS FOR DEFENDANT, CENTRAL TEXAS HIGHWAY CONSTRUCTORS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been sent via court e-notice, to the following counsel of record, on this 15th day of November, 2018.

Alicia G. Curran
Alissa K. Christopher
Cozen O'Connor
1717 Main Street, Suite 3100
Dallas, Texas 75201

*/s/ Micah E. Skidmore*
Micah E. Skidmore
