IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ZURICH AMERICAN INS. CO., et al. | § | |
| | § | |
| V. | § | NO. 1:18-CV-602-RP |
| | § | |
| CENTRAL TEXAS HIGHWAY | § | |
| CONSTRUCTORS, LLC | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. No. 27); Plaintiffs' Response (Dkt. No. 32); Defendant's Reply (Dkt. No. 34); Plaintiffs' Supplemental Brief in Light of Stay of CTHC's State Court DJ (Dkt. No. 41); Defendant's Supplemental Reply (Dkt. No. 42); Plaintiffs' Notice of Change of Factual Circumstances (Dkt. No. 51); Steadfast Insurance Company's Motion to Intervene (Dkt. No. 52); Defendant's Response in Opposition to Steadfast Insurance Company's Motion to Intervene & Notice of Change of Circumstances (Dkt. No. 53); and Steadfast Insurance Company's Reply (Dkt. No. 54). The District Court referred the motion to intervene to the undersigned Magistrate Judge for resolution and the motion to dismiss for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72 and Rule 1(c) of Appendix C of the Local Rules.

**I. GENERAL BACKGROUND**

Plaintiffs Zurich American Insurance Company and its subsidiary American Guarantee & Liability Insurance Company ("AGLIC") filed this suit seeking declaratory relief under 22 U.S.C. § 2201 against Defendant Central Texas Highway Constructors, LLC ("CTHC"). Dkt. No. 23 at 1. Plaintiffs seek a declaration that they have no obligation under their respective insurance policies to

defend or indemnify CTHC for the allegations in an underlying lawsuit pending in bankruptcy court. *Id.* Steadfast Insurance Company—another subsidiary of Zurich—also seeks leave to intervene as a plaintiff in this case, and to join in the request for declaratory relief under 28 U.S.C. § 2201 against CTHC. Dkt. No. 52 at 1. Zurich and AGLIC have their principal place of business in Illinois and are incorporated in New York. Dkt. No. 23 at 2. Steadfast was originally incorporated in Delaware, but as of December 31, 2018, is incorporated in Illinois. *Id.*; Dkt. No. 52 at 2-3. CTHC has its principal place of business in Texas and is incorporated in Delaware. *Id.* at 3.

This insurance coverage lawsuit arises out of a demand for coverage and defense that CTHC has made in relation to a suit filed against it an adversarial proceeding pending in the Western District of Texas Bankruptcy Court. Dkt. No. 23 at 5. That suit was filed by SH 130 Concession Company. On March 9, 2018, CTHC sought coverage under its insurance policy with Zurich for the claim filed by SH 130 Concession Co., and Zurich responded on April 5, 2018, stating it had no duty to defend CTHC against that claim. *Id.* at 3. CTHC did not seek coverage under its policy with AGLIC until almost six months after the underlying bankruptcy lawsuit was filed. *Id.* Roughly three and a half months after Zurich notified CTHC of its determination that it had no duty to defend the case, Zurich filed this lawsuit seeking a declaration of its rights and duties under its policy with CTHC. *Id.* A month later, CTHC filed a lawsuit in the 192nd District Court of Dallas County, Texas, addressing the same issues present in this lawsuit, but including Steadfast as a party, and raising additional claims beyond those it has raised in this suit. *Id.*

CTHC moves to dismiss this case under Rule 12(b)(1), and asks the Court to decline to exercise jurisdiction over this dispute and grant its motion to dismiss because a Texas state court action is currently pending over the same matters at issue in this case. Dkt. No. 27 at 1. CTHC alleges that the state action is more complete than this case, because Steadfast is included as a

defendant there, and other related contractual and extra-contractual claims are pending there, but not here. *Id*. at 8-9.[1]

## II. LEGAL STANDARD

Rule 24(b)(2) provides for permissive intervention when timely application is made by the intervenor, the intervenor's claim or defense and the main action have a question of law or fact in common, and intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Additionally, a motion to intervene must be "accompanied by a pleading setting forth the claim or defense for which intervention is sought." FED. R. CIV. P. 24(c). A party may not intervene if its presence would destroy complete diversity. 28 U.S.C. § 1367(b) (providing that, in diversity actions, "the district courts shall not have supplemental jurisdiction . . . over claims by persons . . . seeking to intervene as plaintiffs under Rule 24 . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332."). Whether to permit intervention "is wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470-71 (5th Cir. 1984) (quoting Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 1913, at 551). In acting on a request for permissive intervention, the district court may consider, among other factors, whether the intervenors' interests are adequately represented by other parties, and whether intervention will unduly delay the proceedings or prejudice existing parties. *Id.* at 472.

---

[1]Steadfast was originally a plaintiff in this suit but withdrew and was replaced by AGLIC when it became evident Steadfast's presence would ruin complete diversity under 28 U.S.C. § 1332(a)—the basis for federal jurisdiction here. Dkt. No. 52 at 2-3. However, in December of 2018, Steadfast redomesticated from Delaware (the state it had in common with CTHC) to Illinois. It thus now seeks to intervene as a plaintiff against CTHC.

Rule 12(b)(1) allows a party to assert a lack of subject-matter jurisdiction as a defense to a lawsuit. Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* But in a declaratory judgment suit, even if the court determines it has jurisdiction that does not mean the court must decide the action. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant," and the district court has "unique and substantial discretion in deciding whether to declare the rights of litigants." 515 U.S. at 286-87. To decide whether to dismiss a declaratory judgment action, courts should determine: (1) whether the declaratory action is justiciable; (2) whether this court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action. *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003) (citing *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)). For a declaratory action to be justiciable it must seek to resolve an "actual controversy" rather than an abstract or hypothetical dispute. *Orix*, 212 F.3d at 895. Generally, an actual controversy exists when "a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Id.* at 896. Furthermore, if the court has jurisdiction over a declaratory judgment action, the court must balance the following factors in deciding whether to dismiss the action:

> 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; 2) whether plaintiffs filed suit in anticipation of a lawsuit filed by defendant; 3) whether the plaintiff engaged in forum shopping in bringing the

claim; 4) whether any inequities will ensue by allowing the declaratory plaintiff to gain precedence in time or to change forums; 5) whether the federal court is a convenient forum for the parties and witnesses; 6) whether retaining the suit would further judicial economy; and 7) whether the federal court is being called on to construe a state judicial decree.

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994).

## III. ANALYSIS

I.  **Steadfast's Motion to Intervene (Dkt. No. 52).**

As noted, when this suit was filed, Steadfast was incorporated in Delaware, which is also the state of incorporation of CTHC. In December 2018, however, Steadfast redomesticated from Delaware to Illinois. Dkt. No. 51 at 1. Shortly thereafter, Steadfast filed a motion to intervene as a plaintiff. Dkt. No. 52. Steadfast made this motion well within the deadline stated in the Scheduling Order for the amendment of pleadings and addition of parties. Dkt. No. 50. CTHC contends the motion should be denied as it is simply a "procedural gambit" demonstrating Plaintiffs' forum shopping tactics and that the suit was filed in anticipation of CTHC's state action. Dkt. No. 53 at 1-2. Steadfast responds that the redomestication was for legitimate business reasons and had nothing to do with this lawsuit.[2] Dkt. No. 54 at 1 n.3.

As stated earlier, permissive intervention is within the court's discretion and requires timeliness, that the intervenor's claim or defense and the main action have a question of law or fact in common, and that intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. *New Orleans*, 732 F.2d at 470–71; FED. R. CIV. P. 24(b)(2). A court considers four factors in determining the timeliness of a motion to intervene: "1) the length of time the party knew or should have known of its interest in the lawsuit; 2) the prejudice to existing

---

[2]Steadfast, along with three other Zurich companies, changed their states of incorporation to Illinois in 2018. Dkt. No. 54 ¶ 1 n.3

parties; 3) prejudice to the intervening party if intervention is denied; and 4) the presence of unusual circumstances." *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 167 (5th Cir. 1993); *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987). Steadfast knew of its interest in the lawsuit from the beginning, as it originally was a plaintiff in the case. Dkt. No. 52 at 2-3. It withdrew when it realized its presence destroyed complete diversity. As discussed, however, upon its redomestication to Illinois, it timely sought leave to intervene. Dkt. No. 52. Thus, though there was some delay caused by its joinder, and then departure from the lawsuit, the motion to intervene is within the time frame set by the scheduling order.

Secondly, Steadfast seeks a declaration regarding its obligations to provide a defense and coverage to CTHC for the same underlying bankruptcy suit referenced by the other Plaintiffs. Dkt. No. 52 at 4-5. It thus appears that Steadfast's claim and the main action have a question of law or fact in common. However, because the policy Steadfast issued to CTHC is different from Plaintiffs' policies, Steadfast's interests will not be adequately represented by parties already included in this suit. *Id.* at 5. Finally, it does not appear that CTHC would suffer any prejudice by Steadfast's intervention, as CTHC itself agrees it needs to have Steadfast in the litigation to obtain complete relief.

Because the proper exercise of its discretion in this case is to permit Steadfast's intervention, Steadfast Insurance Company's Motion to Intervene (Dkt. No. 52) is **GRANTED**.

## II. Defendant CTHC's Motion to Dismiss (Dkt. No. 27)

CTHC has moved to dismiss under Rule 12(b)(1), and requests that the Court decline to exercise jurisdiction because there is a state court action pending that is broader in scope and that includes a party which at the initiation of this federal suit could not be a plaintiff due to a lack of diversity of citizenship. Dkt. No. 27 at 1. It is evident that the court has jurisdiction under 28 U.S.C.

§ 1332(a) as the current parties have diversity of citizenship (the intervention of Steadfast will not destroy diversity), and the amount in controversy is over $75,000. Dkt. No. 23 at 3. Therefore, the question is whether the Court should exercise jurisdiction in light of its broad discretionary power under the Declaratory Judgment Act. The first two considerations— whether the declaratory action is justiciable and whether this court has the authority to grant declaratory relief—are not in dispute *Sherwin*, 343 F.3d at 387. Although there is some debate whether Plaintiffs' declaratory judgment action regarding a duty to indemnify is ripe, as the bankruptcy suit is still ongoing, the Texas Supreme Court recognized in *Farmers Tex. County Mut. Ins. Co. v. Griffin* that "when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify," an exception exists regarding the requirement of a ripe controversy for the Court to issue a declaratory judgment. 955 S.W.2d 81, 84 (Tex. 1997).

The parties do disagree, however, on whether the Court, in exercising its discretion, should nevertheless decline to decide this suit. *Sherwin*, 343 F.3d at 387. To determine how the Court should exercise its discretion, the Court must balance the *Trejo* factors cited earlier. Factor one—whether there is a pending state action—is the only factor that weighs in favor of dismissal. Currently, there is a state court action that involves all the parties and the claims present in this federal suit. Additionally, CTHC points out that the state action is more complete and includes claims not raised in this suit. Dkt. No. 27, at 8-9. Plaintiffs note, however, that the state action is only more complete because CTHC has chosen not to bring those claims here. When a parallel state suit exists, the court should examine comity and efficiency in exercising its discretion. *Sherwin*, 343 F.3d at 391. Although consideration should be given to the dates of filing, there is no "first to file rule" when one case is in state court and the other is in federal court. *Am. Bankers Life Ass. Co. of*

*Fla. v. Overton*, 128 F. App'x 399, 403 (5th Cir. 2005) (unpublished). If the declaratory judgment action "raises only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case." *Sherwin*, 343 F.3d at 390-91 This factor therefore weighs in favor of dismissal, as only state law issues are raised in both cases. *See, e.g., . Excess Ins. Co. of Am.*, 316 U.S. 491, 495.

The remaining factors either weigh in favor of retaining the suit or are neutral. Factor two—whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant—weighs in favor of retaining the suit. Although Plaintiffs could likely anticipate some potential legal action from CTHC, there was no "race to the courthouse." Steadfast, an original plaintiff, filed this suit a month after its last email correspondence with CTHC, and current Plaintiff Zurich filed almost three months after its last email correspondence with CTHC. Dkt. No. 27-1, 27-2. In the email exchanges, both Zurich and Steadfast took the position they had no duty to defend CTHC in the underlying bankruptcy lawsuit. *Id*. Additionally, CTHC did not file its corresponding state action until one month after the federal suit was filed. Dkt. No. 32 at 1. CTHC contends the reason for this is that the parties were in negotiations at the time Zurich filed suit. Dkt. No. 27 at 11. However, the only evidence cited for this contention is a series of emails which hardly constitute a negotiation. *Id.* Both Zurich and Steadfast sent correspondence to CTHC taking the position they had no duty to defend CTHC, to which CTHC responded by disagreeing with that assessment. Dkt. No. 27-1 and 27-2. This concluded the "negotiations." Furthermore, the authorities CTHC cites are not on point, because in those case there were actual negotiations and often a deadline where the would-be plaintiff agreed not to file suit before a certain date, and the would-be defendant preemptively filed in federal court just before that deadline expired. *Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94, 96 (5th Cir. 1992)*; Paj, Inc. v. Yurman Design, Inc.*, No. Civ.A. 3:98-CV-2847-P, 1999 WL

8

68651, at *3 (N.D. Tex. Feb. 9, 1999). Here, no real negotiations were taking place, and CTHC had not agreed to wait until a specific date to file a lawsuit. The Court concludes that this lawsuit was not anticipatory, and this factor thus weighs in favor of retaining the suit.

The third factor—forum shopping—also weighs in favor of retaining the suit. Both Plaintiffs and CTHC accuse the other of engaging in forum shopping. CTHC contends it was robbed of the opportunity to select its forum and take the role of the true plaintiff by the insurance companies filing this suit in federal court. It contends that this filing occurred in an attempt by Plaintiffs to secure a more favorable forum, but provides no explanation as to what is more favorable about the federal forum. Dkt. No. 27 at 12; *Maxum Indem. Co. v. BRW Floors, Inc.*, 2015 WL 5881584, at *8 (W.D. Tex. Oct. 7, 2015) (stating that defendant only pointing out the courts' general view on anticipatory suits as impermissible forum shopping without additional evidence was not sufficient for a conclusion of impermissible forum shopping).

Additionally, CTHC contends that one of the original plaintiffs, Steadfast, removing itself from the suit and being replaced by AGLIC upon the realization that Steadfast would destroy complete diversity, is evidence of forum shopping. However, this Court is not convinced the removal of Steadfast demonstrates evidence of improper forum shopping. Additionally, the Court agrees with the Ninth Circuit's articulation in *Aetna Casualty & Surety Co. v. Merritt* that, "[w]e know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage." *Aetna Cas. and Sur. Co. v. Merrit,* 974 F.2d 1196, 1199 (9th Cir. 1992). Abusive forum shopping is even less likely to be found where, as here, "a foreign insurer files a diversity action in federal court, and . . . the selection of the federal forum does not change the applicable law." *Hanover Ins. Co. v. Superior Labor Servs.*, 2017 WL 2984867, at *22 (E.D. La. July 12, 2017). This is because invoking

9

jurisdiction under these circumstances is "in keeping with the traditional justification for diversity jurisdiction, which is to protect such foreign defendants" and most lawsuits require forum selection when more than one venue is appropriate to hear a case. *Houston Specialty Ins. Co. v. Ascension Insulation & Supply, Inc.*, 2018 WL 3800052, at *3 (W.D. La. July 25, 2018). Therefore, this factor does not weigh in favor of dismissal.

Factor six—whether retaining the lawsuit in federal court would serve the purposes of judicial economy—also weighs in favor of retaining the suit. CTHC contends it is a waste of court resources to have a state and federal action pending and that only one court should decide all the issues. Plaintiffs responded initially by arguing that the state suit was likely to be stayed, and it in fact has been stayed, with the state court stating that it would only reconsider the stay if this court declined to exercise jurisdiction over the case. Dkt. No. 41-1. Additionally, Plaintiffs contend that the filing of the state suit was improper forum shopping by CTHC, and it can raise all of its issues here through counter and third party claims. Plaintiffs cite CTHC's lawyers comments in the state action in support of its forum shopping claim, highlighting the fact that CTHC's lawyer in open court said that "it's a matter of our preference. We prefer to be here" and that if it was absolutely necessary, all of the claims could be sought in federal court. Dkt. No. 41 at 2; Dkt. No. 41-2 at 21-22. Because all claims among the parties can be resolved here, and because the state action has been stayed at this time, retaining jurisdiction over this suit furthers the purposes of judicial economy.

The final factors—factors four, five and seven—are also neutral. Factor four—whether any inequalities will ensue by allowing the declaratory plaintiff to gain precedence in time or to change forums—originally raised concerns regarding CTHC adjudicating in two courts. However, now that Steadfast can intervene as a plaintiff, all matters can be resolved against all parties in this federal suit, and in light of the state court staying the state action pending the resolution of this suit, there

is not a current risk of divergent rulings. Additionally, although Defendant contends inequities flow from it being robbed of its status as the rightful plaintiff it "is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Similarly, factor five—whether the federal court is a convenient forum for the parties and witnesses—originally raised concerns regarding the duplicative nature of the state and federal suits. However, with Steadfast intervening and the state action being stayed, all matters can be resolved in this federal action. Additionally, neither Defendant nor Plaintiffs demonstrated that either state or federal court was an inconvenient forum. Finally, factor seven—whether the federal court is being called on to construe a state judicial decree—is neutral, as there is no need to construe a state judicial decree to resolve the case. Accordingly, these three factors are neutral in the consideration of whether the Court should decline to exercise jurisdiction.

Given that only one of the *Trejo* factors weighs in favor of dismissal while the other six either weigh in favor of retaining the suit or are neutral, the Court should retain this case. The undersigned therefore **RECOMMENDS** that the District Judge **DENY** Defendant's Motion to Dismiss Plaintiff's Second Complaint (Dkt. No. 27).

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen

(14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150–53, 106 S. Ct. 466, 472–74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 20th of July, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE